# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff-Respondent,<br>   v.<br>FERNANDO HERNANDEZ BELTRAN,<br><br>                Defendant-Movant. | Civ. Case No. 13cv452 BTM<br>Crim. Case No. 11cr1751 BTM<br><br>**ORDER DENYING § 2255 MOTION AND DENYING A CERTIFICATE OF APPEALABILITY** |

Defendant has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. For the reasons discussed below, Defendant's motion is **DENIED**.

## I. BACKGROUND

In an Indictment returned on May 4, 2011, Defendant Fernando Hernandez Beltran was charged with being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a) and (b).

On December 8, 2011, Defendant tendered a plea of guilty, and on January 4, 2012, this Court accepted Defendant's guilty plea.

Based on a Criminal History Category of V and an Offense Level of 21, with a Guideline range of 70-87 months, Probation recommended a sentence of 60 months in addition to 2 years of supervised release. The Government recommended a sentence of 75 months. Defendant's attorney argued that Defendant's criminal history is better represented

by Criminal History Category III and that a departure of 8 levels was appropriate based on a combination of factors including, but not limited to, Defendant's age, cultural assimilation, length of residence in the country, lack of serious immigration history, family ties, benign motivation for reentering, and diminished likelihood of recidivism. (Doc. No. 32, Def.'s Sentencing Memorandum at 4.) Defendant's attorney suggested that a 21-month sentence was sufficient.

At the sentencing hearing, the Court agreed to depart to Criminal History Category IV given the multiple number of points that came from motor vehicle offenses. (Tr. at 18.) The Court also agreed to a mitigation departure of 4 levels based on the fact that Defendant had lived in the United States for almost 30 years and has a wife and three children who are legally in the United States. (Tr. at 19.)

The Court determined that the 21 months recommended by defense counsel was inadequate to deter Defendant and other persons who have similar criminal histories. Taking into account the § 3553(a) factors, the Court concluded that the appropriate sentence was 37 months followed by three years of supervised release.

## II. DISCUSSION

In his § 2255 motion, Defendant raises the following claims: (1) his prior deportation, which underlies his conviction in this case, was invalid because his attorney during the deportation proceedings failed to inform him that a legal resident who has resided in the United States for 7 years continuously qualifies for cancellation of removal after committing an aggravated felony; (2) he pled guilty based on the instructions of his attorney because his attorney "threatened" him by informing him that he would get a longer sentence if he went to trial and was found guilty; (3) the district court erred in imposing supervised release because he is a deportable alien; and (4) the district court miscalculated his offense level and failed to consider the length of the defendant's residence and his family ties. None of Defendant's claims are meritorious.

Defendant is incorrect that a legal resident who has resided in the United States for

7 years continuously qualifies for cancellation of removal even after committing an aggravated felony. Under 8 U.S.C. § 1229b(a), the Attorney General may cancel removal if the alien in question (1) has been lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status; and (3) *has not been convicted of any aggravated felony*. Defendant's 2009 conviction in North Dakota for aggravated assault, North Dakota Code 12.1-17-02, constitutes a "crime of violence" under 18 U.S.C. § 16(b) for the same reasons that it qualifies as a "crime of violence" under USSG § 2L1.2(b)(1)(A)(ii). (Transcript of Status Hearing on 7/24/12 at 3-7.) Therefore, at the time of his removal in 2010, Defendant had been convicted of an aggravated felony and was not eligible for cancellation of removal. 8 U.S.C. § 1101(a)(43)(F). [1]

Defendant argues that he only entered a plea of guilty because his attorney told him that he would get a longer sentence if he went to trial. However, Defendant's attorney did not provide him with any information that was false. If Defendant had gone to trial and been found guilty he would not have qualified for an adjustment for acceptance of responsibility. Therefore, the applicable guideline range would indeed be higher. Therefore, Defendant's decision to plead guilty was not based on any misinformation from his attorney, and Defendant has not established that his guilty plea was not voluntary, knowing or intelligent.

Defendant argues that supervised release is "not applicable" to aliens who are going to be deported after imprisonment. Defendant is incorrect. Effective November 1, 2011, USSG § 5D1.1 was amended to include subsection (c), which provides: "The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." The commentary to § 5D1.1(c) explains:

> In a case in which the defendant is a deportable alien specified in subsection (c) and supervised release is not required by statute, the court ordinarily should not impose a term of supervised release. Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a

---

[1] Defendant does not argue in his motion that his aggravated assault conviction does not qualify as an aggravated felony.

defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.

In United States v. Dominguez-Alvarado, 695 F.3d 324 (5th Cir. 2012), the Fifth Circuit explained that the word "ordinarily" as used in § 5D1.1(c) is not mandatory and leaves "within the discretion of the sentencing court the option of imposing supervised release in uncommon cases where added deterrence and protection are needed." Id. at 329. The Fifth Circuit held that the imposition of supervised release in the case before it was justified by the district court's "particularized remark" at sentencing that it "gave the sentence after looking at the factors in 3553(a), to deter future criminal conduct, his particular background and characteristics, which apparently do not make him a welcome visitor to this country." Id. at 330. Similarly, in United States v. Valdavinos-Torres, 704 F.3d 679 (9th Cir. 2012), the Ninth Circuit held that the imposition of supervised release on the deportable defendant was reasonable in light of the district court's explanation:

> Because you have family here and to make sure that you understood we mean business in this regard, I am going to impose supervised release, finding the added deterrent value with your family members here makes it a case that is contrary to the recommendations of the advisory Guidelines.

Id. at 693.

As in Dominguez-Alvarado and Valdavinos-Torres, Defendant did not object to the imposition of supervised release at sentencing, but the Court nonetheless explained why it thought supervised release was necessary. The Court explained that taking into account all of the factors, including Defendant's criminal history (including a serious assault charge and the fact that Defendant committed another offense while on probation for the assault charge), his recent deportation and return to the United States shortly thereafter, and his family ties in the United States, the sentence imposed by the Court was the least sentence that the Court could impose and still deter Defendant and others. (Tr. at 22-23.) The Court specified that the three years of supervised release was "to add a further deterrent." (Tr. at 20.)

Even if the Court's explanation for imposing supervised release was inadequate,

Defendant is not entitled to relief on this ground. Defendant did not file a direct appeal of his sentence. Therefore, Defendant waived his right to object to this alleged sentencing error. See United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1995) (holding that "nonconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may not be reviewed by way of 28 U.S.C. § 2255"); United States v. McMullen, 98 F.3d 1155, 1157 (9th Cir. 1996) ("Petitioners waive the right to object in collateral proceedings unless they make a proper objection before the district court or in a direct appeal from the sentencing decision.").

Due to his failure to appeal and raise objections at the sentencing hearing, Defendant has also waived his nonconstitutional sentencing claims that the Court miscalculated his offense level and failed to consider his family ties and length of residence in the United States. Moreover, Defendant's claims lack merit. The Court properly calculated Defendant's offense level – a base offense level of 8 (USSG § 2L1.2(a)), plus 16 for having been previously deported after a conviction for a crime of violence (§ 2L1.2(b)(1)(A)(ii)), minus 3 for acceptance of responsibility, for a total offense level of 21. The Court departed four levels after determining that Defendant was entitled to a mitigation departure based on cultural assimilation, resulting in an offense level of 17. Thus, the Court specifically considered the fact that Defendant had lived in the United States for almost 30 years and had a wife and three children in the country. (Tr. at 19.) Defendant suggests that he was entitled to an adjustment for fast track. However, there was no plea agreement and Defendant was not part of the fast track program. (Tr. at 13.) Therefore, Defendant did not qualify for a fast track adjustment. The Court gave due consideration to all of the § 3553(a) factors and properly took into account mitigating factors such as Defendant's family ties and length of residence in the United States.

//
//
//

In a supplemental pleading filed on May 2, 2013, Defendant raises an additional argument. He contends that under United States v. Rodriguez-Ocampo, 664 F.3d 1275 (9th Cir. 2011), the Court erred in enhancing his sentence by sixteen levels under USSG 2L1.2(b)(1)(A)(ii). However, Rodriguez-Ocampo is inapplicable because unlike that case, here there was no deportation that violated due process. Thus, the enhancement for being deported after conviction for a crime of violence was appropriately applied in this case.

### III. CONCLUSION

For the reasons discussed above, Defendant's § 2255 motion is **DENIED**. The Court **DENIES** a Certificate of Appealability. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: May 28, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court